IzCANNELLA, Judge.
Defendant, William J. Lewis, appeals from his conviction for possession of a firearm by a convicted felon and 10 year sentence to imprisonment at hard labor without benefit of parole, probation or suspension of sentence. For the reasons which follow, we affirm the conviction and sentence and remand.
The detailed facts of this case are in dispute. Essentially, however, defendant was in an automobile being driven by Gregory White (White). Joshua Gray (Gray) was also a passenger in the automobile. As the vehicle in which they were riding was being driven through the Marrero projects, they encountered Curtis Thomas standing on the sidewalk. At some point, Curtis Thomas allegedly began firing a weapon at the vehicle in which defendant was riding. White reversed the vehicle and attempted to leave the area. In the course of this activity, Gray was shot. Gray gave a statement identifying the defendant has the person who shot him. When questioned, the defendant admitted that he shot Gray, but stated that it was an accident. Gray also stated that the shooting was an accident. Nevertheless, upon learning that the defendant was a convicted felon, he was arrested and charged with violating La. R.S. 14:95.1, possession of a firearm by a convicted felon. Following a jury trial, the jury returned a verdict of guilty as charged. The trial court thereafter sentenced defendant to the minimum sentence for commission of that offense, 10 years imprisonment at hard labor without benefit of parole, probation or suspension of sentence. It is from this conviction and sentence that defendant appeals.
On appeal defendant assigns three errors.
*1232 ASSIGNMENT OF ERROR NUMBER ONE.
Defendant complains that the state did not produce sufficient evidence at trial to prove the elements of La. R.S. 14:95.1 beyond a reasonable doubt. He contends that the state failed to prove that his possession of a firearm was knowing or intentional and that he was not acting in self-defense when he possessed the gun.
The state argues, to the contrary, that despite the evidence put forth by the defense, that .the defendant only took possession of the gun at a moment when he needed it for self-defense, the state presented sufficient evidence to rebut this defense. The state notes that the jury weighed all the evidence and rejected the defense theory, finding defendant guilty as charged.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based in proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, Uto find the essential elements of the crime beyond a reasonable doubt.
Defendant was charged with being a felon in possession of a firearm in violation of La. R.S. 14:95.1, which provides in pertinent part that “It is unlawful for any person who has been convicted of a crime of violence as defined in R.S. 14:2(13) ... or any violation of the Uniform Controlled Dangerous Substances Law which is a felony ... to possess a firearm or carry a concealed weapon.” The jurisprudence has recognized that the crime of possession of a firearm by a convicted felon has three elements:
1. status of the defendant as a convicted felon;
2. physical and/or constructive possession by the defendant; and
3. the instrumentality possessed was a firearm.
State v. Mose, 412 So.2d 584 (La.1982); State v. Hill, 562 So.2d 12 (La.App. 5th Cir.1990), writ denied, 567 So.2d 99 (La.1990).
The defendant claims that his possession of the gun was justified because he acted in self-defense.
The Louisiana Supreme Court in State v. Blache, 480 So.2d 304 (La.1985) recognized that self-defense can justify the possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1, but placed limits on possession in self-defense by holding that:
[W]hen a felon is in imminent peril of great bodily harm or reasonably believes himself or others to be in such danger, he may take possession of a weapon for a period no longer than is necessary or apparently necessary to use it in self-defense, or in the defense of others.
The confrontation between the defendant and Curtis Thomas on the date of the events which lead to the charged offense derived from an earlier armed Rrobbery that took place two months prior on September 16, 1996. On that date Curtis Thomas and three companions kicked in the door of the house in which the defendant was living. The armed robbers stole $6000 in cash and shot several occupants of the house including the defendant and White. Both the state and the defendant claim that this incident precipitated the confrontation with Curtis Thomas on November 3, 1996.
On November 3,1996, the defendant along with White and Gray went to a fair at the Belle Promenade shopping center. The defendant testified that he and his two companions met Samuel Lewis at the fair and gave him a ride home. He further testified that, upon leaving the fair, they encountered traffic and chose an alternate route which led them through the Marrero projects. WTiile driving through the projects, they encountered Curtis Thomas who was standing on the sidewalk. According to the defendant, Curtis Thomas began to fire at the car without provocation. White put the car into reverse and fled the scene.
During the attack by Curtis Thomas, Samuel Lewis produced a gun. The defendant claims that he had no knowledge that Samuel Lewis was carrying a gun prior to his pulling it out. As Samuel Lewis attempted to return fire, the gun jammed and fell on the floor. The defendant claims that he picked up the *1233 gun to attempt to fix it. As he tried to fix the gun, it went off and Joshua Gray was shot.
The defendant’s version of events is supported by the testimony of both Gray and White. Prior to trial, on November 3, 1996, the other alleged occupant of the car, Samuel Lewis, was murdered.
The state presented a significantly different version of the events that occurred on November 3, 1996. The state claimed that the defendant along withJ^White and Gray, went looking for Curtis Thomas after the fair to retaliate for the shooting on September 16, 1996. The state further claimed that Samuel Lewis was not present in the car at the time of the shooting.
Detective Mark Berggren testified that he investigated a complaint of shots fired in the Marrero projects on the night of November 3,1996. He testified that a vehicle, matching the description of the vehicle in which the defendant was riding, was seen driving without headlights illuminated on the grass between houses. The detective found fresh tire tracks on the grass. Based on this testimony, the state argued that the defendant and his companions were searching for Curtis Thomas to ambush him for the September 16th shootings.
The state also refuted the defendant’s version of events inside the car. Officer Sean Gardner testified for the state. He arrived at the scene where the car stopped soon after the defendant and White abandoned it. As he arrived on the scene, he witnessed only two black males fleeing the ear. He was not able to identify those whom he saw fleeing.
The state then called Detective Russell Brunet who investigated the shooting of Gray as a possible aggravated assault. Detective Brunet took statements from Gray, White and the defendant. In each of those three statements, Samuel Lewis was not mentioned as an occupant of the car. In fact, Gray stated that the only other occupants were White and the defendant.
In addition to the testimony of the officers, the state also attacked the credibility of the defendant and each of his witnesses. This questioning centered on their trial testimony, which for the first time included allegations that Samuel Lewis was in the car on the night of the shooting. The state questioned ^he defendant, White and Gray about the inconsistencies between their statements to Jlthe P°lice and their trial testimony.
The state also attacked the credibility of defendant’s aunt. She stated that the $6,000 which was stolen from her home on September 16,1996 was hers, but she was unable to explain the source of the money.
When the trier-of-fact is confronted by conflicting testimony, the determination of that fact rests solely with that judge or jury, who may accept or reject, in whole or in part, the testimony of any witness. State v. Jiron, 96-319 (La.App. 5 Cir. 10/1/96), 683 So.2d 769, 771; State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983). Both this Court and the Louisiana Supreme Court have held that it is not the function of the appellate court to assess the credibility of witnesses or reweigh the evidence. State v. Styles, 96-897 (La.App. 5 Cir. 3/25/97), 692 So.2d 1222, 1233; State ex rel. Graffagnino v. King, 436 So.2d at 563.
In this case, the jury found the defendant guilty. By finding defendant guilty, the jury discounted his witnesses and instead determined that the evidence was sufficient to establish, beyond a reasonable doubt, that the defendant possessed a firearm and that possession was not committed in self-defense. Viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found, beyond a reasonable doubt, that the defendant possessed a firearm, that the possession was not committed in self-defense, and thus, that defendant was guilty of the charged offense. The evidence presented was constitutionally sufficient.
This assignment of error has no merit.
ASSIGNMENT OF ERROR NUMBER TWO.
In this assignment of error the defendant argues that the trial court erred |8when it allowed the jury to consider evidence not properly admitted by the trial court. The defendant’s argument is not based on the inadmissibility of the evidence but, rather, on *1234 the lack of formality by the trial court in admitting evidence. More particularly, defendant argues that exhibits 3 — 12 (various photographs of the vehicle and the scene of the offense), as well as exhibits 13 — 17 (recordings or transcripts of witnesses’ statements), should not have been considered by the jury. Although there was no record objection by the defense to the admission of these exhibits, and in some cases the defense expressly agreed to their admission, the defense argues herein that they should not have been considered by the jury because the court did not expressly accept the exhibits into evidence.
At the outset it must be noted that if no objection is made in the trial court, any error committed therein is not preserved for appellate review. In the instant case, the defense either made no objection to the introduction of the evidence or withdrew any objection it had. In some instances, the defense expressly acquiesced in the admission of the evidence.
Moreover, there are no statutory or jurisprudential rules governing the formalities required when a trial court admits evidence. Traditionally, the party wishing to introduce documentary evidence would first have the evidence marked as an exhibit and lay a foundation for admission of the evidence. The proposed evidence would next be shown to the opposing attorney and then the proponent would offer the evidence to the trial court. At this point, the opponent may object to the introduction of the proposed evidence. The trial court must then rule on the objection and admit or exclude the evidence. McCormick on Evidence, Vol. 1, Sec. 51 at 195 (4th ed.1992).
bln the present case, the state followed each of the steps outlined in McCormick. In each case, where the state sought to introduce evidence, the defense either objected to the introduction of the evidence and withdrew its objection prior to a ruling on the objection by the trial court or stipulated to its introduction of the evidence. Thus, the trial court made no explicit ruling on the admissibility of the proposed evidence. But, none was necessary.
Based on the foregoing, we find that the evidence was tacitly admitted without objection by the trial court. The trial court gave no indication that the evidence was not to be admitted. To the contrary, in the case of the witnesses’ statements and the transcripts of those statements, the trial court allowed the jury to hear the statements and read the transcripts. Likewise, as to the photographs, the foundation was laid for the admission into evidence of the photographs by the testifying sheriffs officers and the photographs were used to illustrate their testimony. We find no error in the jury’s consideration of this evidence in reaching their verdict.
This assignment of error has no merit.
ASSIGNMENT OF ERROR NUMBER THREE.
In this assignment of error defendant argues that the sentence imposed by the trial court was excessive because, under the circumstances, it amounted to cruel, unusual and excessive punishment. More particularly, the defendant argues that, although he received the minimum term provided under La. R.S. 14:95.1, 10 years imprisonment at hard labor, the sentence constitutes cruel and unusual punishment as applied to him, and the trial court should have imposed a sentence below the statutory minimum.
The Eighth Amendment to the United States Constitution and Article 1, § 20 of the Louisiana Constitution prohibit the imposition of excessive or cruel punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739 (La.1992); State v. Munoz, 575 So.2d 848 (La.App. 5th Cir.1991), writ denied, 577 So.2d 1009 (La.1991).
Initially, the state argues that we are precluded from reviewing defendant’s sentence for excessiveness because it is the minimum sentence within the statutory range set by the legislature for this offense. The state relies on the case of State v. Rome, 96-0991 (La.7/1/97), 696 So.2d 976 in support of its argument.
*1235 We do not, however, read Rome so narrowly. The court in Rome does state that “the fixing of penalties is purely a legislative function_” Id. at 978. However, in doing so the court cites, approvingly, the case of State v. Dorthey, 623 So.2d 1276, 1280 (La.1993), for its holding that the trial judge has the discretion to reduce a mandatory sentence if it is determined that the punishment mandated by the statute is constitutionally excessive. Thus, we hold, as expressed in the concurring opinion in Rome, “[i]t is the function of the legislative branch to fix the range of sentences for defined crimes; it is the function of the judicial branch to exercise discretion in selecting the sentence for a particular criminal act, within the range fixed by the Legislature (as long as the sentence is not constitutionally excessive.)” Review of the sentence for constitutional excessiveness is within our constitutional mandate.
The defendant supports his argument that his sentence is excessive because his one prior conviction for possession of cocaine occurred on October 26, 1995 and that he has no other convictions. He further points out that his possession ofjnthe weapon was not in connection with the commission or attempted commission of another crime and that at the time of his conviction he was only twenty years old.
However, as we view the facts, it is also true that the defendant had been on probation less than eight months at the time of the possession of the weapon. Furthermore, although Gray was shot by accident, the altercation between the defendant and Curtis Thomas which prompted the possession of the firearm was the result of an attempted ambush as retribution from a prior violent episode.
Accordingly, we find that the facts cited by defendant are not sufficient to support a finding that the 10 year minimum sentence imposed in this case was cruel and unusual under the standards of the Eighth and Fourteenth Amendments to the United States Constitution or Article 1, § 20 of the Louisiana Constitution of 1974.
This assignment of error has no merit.
ASSIGNMENT OF ERROR NUMBER FOUR
By this assignment of error, defendant requests that the record be reviewed for errors patent pursuant to La.C.Cr.P. art. 920.
In so reviewing the record, we find that the trial court failed to inform defendant of the prescriptive period for post conviction relief as mandated by La.C.Cr.P. art. 930.8. This does not constitute reversible error, however. Rather, the error may be corrected on remand by order to the district court to inform the defendant of the provisions of La.C.Cr.P. art. 930.8 by sending appropriate written notice to the defendant within 10 days of the rendition of this opinion and to file written proof of defendant’s receipt of the notice in the record of the proceedings. State v. Hall, 95-1073 (La.App. 5th Cir. 4/16/96), 673 So.2d 1127; State v. Kershaw, 94-141 (La.App. 5th Cir. 9/14/94), 643 So.2d 1289.
Accordingly, for the reasons set out above, defendant’s conviction for possession of a firearm by a convicted felon and 10 year sentence at hard labor is affirmed and the case is remanded to the trial court to provide proof in the record of defendant’s receipt of appropriate notice, under La.C.Cr.P. art. 930.8, of the prescriptive period for post conviction relief.
CONVICTION AND SENTENCE AFFIRMED; CASE REMANDED.